UNITED STATES, Appellee,

v.

James M. ALLEN, First Lieutenant,
U.S. Air Force, Appellant.

No. 99–0788.
Crim.App. No. 32727.

U.S. Court of Appeals for
the Armed Forces.

Argued May 4, 2000.

Decided Aug. 30, 2000.

COX, S.J., delivered the opinion of the Court, in which CRAWFORD, C.J., and GIERKE and EFFRON, JJ., joined. SULLIVAN, J., filed an opinion concurring in the result.

For Appellant: *Captain Karen L. Hecker* (argued); *Colonel Jeanne M. Rueth* and *Alison Ruttenberg* (on brief).

For Appellee: *Major Harold M. Vaught* (argued); *Colonel Anthony P. Dattilo, Lieutenant Colonel Ronald A. Rodgers* and *Major Jennifer R. Rider* (on brief).

Senior Judge COX delivered the opinion of the Court.

Contrary to his pleas, appellant was convicted by officer members of anal sodomy, assault consummated by a battery, two specifications of conduct unbecoming an officer,

transporting and receiving child pornography in interstate commerce, and soliciting his wife to commit prostitution, in violation of Articles 125, 128, 133, and 134, Uniform Code of Military Justice, 10 USC §§ 925, 928, 933, and 934, respectively. The convening authority approved the sentence of a dismissal, 7 years' confinement, and total forfeitures. The Air Force Court of Criminal Appeals affirmed the findings and sentence.

We granted review of the following issues:

## I.

WHETHER THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR IN DENYING THE DEFENSE MOTION TO SUPPRESS.

## II.

WHETHER APPELLANT'S CONVICTION FOR SODOMY, A PRIVATE CONSENSUAL ACT BETWEEN APPELLANT AND HIS WIFE, MUST BE SET ASIDE AND DISMISSED SINCE IT IS A VIOLATION OF APPELLANT'S CONSTITUTIONAL RIGHT TO PRIVACY.

### FACTS

#### 1. Issue I

On July 31, 1996, a government network technician became concerned that files passing through the network firewall onto a government computer might contain attached graphic images of pornography. When the technician examined a portion of one image, he concluded it involved child pornography. He reported the incident to his supervisor who in turn reported it to the Air Force Office of Special Investigations (AFOSI or OSI). The internet service provider was "Super Zippo."

The OSI investigation revealed that the computer to which the graphic image was being sent was located in an area in which four people worked, although the area was accessible to others. The investigation excluded three of the four people working in the area as capable of having received the graphic image, largely because those three persons were not present in the area at the time. The remaining individual, appellant, admitted he had been using the computer in question for a period of about 15 to 20 minutes that day. He also admitted that "Super Zippo" was his Internet Access Provider (IAP),[1] and that he possessed "erotica" at home. When asked if this included child pornography, appellant stammered, then asked what the agents meant by child.

Because appellant's private residence was off-post, OSI agents went to El Paso County law enforcement to have them obtain a search warrant. The El Paso County officer prepared an affidavit, went to a civilian judge, and obtained a state search warrant to search appellant's home for child pornography, for documents pertaining to appellant's "Super Zippo" account, and to identify persons controlling the premises. OSI agents accompanied the El Paso County officer to appellant's home. Numerous photos, computers, and computer discs were seized pursuant to the warrant.

The warrant in the case *sub judice* authorized only a search of appellant's residence. The information concerning appellant's IAP account was obtained by an OSI agent, through a telephone conversation with the manager of "Super Zippo," appellant's IAP provider. Although the OSI agent did not possess a warrant when he requested appellant's account information from "Super Zippo," he "specifically asked whether a search warrant or a subpoena [was] required." After consulting with corporate counsel, the manager of "Super Zippo" called the agent and indicated that based upon advice from counsel, all that would be needed to release the records was a "lawyer request." The

---

1. "There are two types of IAPs: (1) Online Service Providers ('OSLs')(e.g., America Online, Prodigy, CompuServe, Microsoft Network) offer a full range of online services in addition to Web access, including e-mail, news, entertainment, and places to 'meet' people with similar interests; and (2) Internet Service Providers ('ISPs') (e.g., AT & T Worldnet, Mindspring, Netcom) offer a cheaper, more 'bare bones' package, including e-mail, Web access, and basic software." *U.S. v. Microsoft Corp.*, 1998 WL 614485 at *5–6 (D.D.C. Sept. 14, 1998).

agent testified that he relied on the manager's assertion that no warrant was required.

The OSI agent testified that he requested information pertaining to appellant's online account and "any records of access to the online service that would indicate different areas that [appellant] traveled to." The information received was a multiple page listing of online services accessed by appellant through his "Super Zippo" account, and did not contain the text of or reveal the content of any communications received or sent.

Appellant makes a multi-faceted attack upon the conduct of law enforcement officials and the search warrant. Those contentions are:

1. The search warrant violated Federal Rule of Criminal Procedure (FRCP) 41, and Air Force Office of Special Investigation (AFOSI) regulations.

2. The search warrant violated the Posse Comitatus Act.

3. The search warrant was a general warrant and not based upon probable cause.

4. The search warrant was obtained as a result of false statements to the state court magistrate judge.

5. The warrantless search of appellant's internet account with "Super Zippo" violated the Fourth Amendment and the Electronic Communications Privacy Act.

After hearing evidence on a motion to suppress the evidence seized from appellant's home and from "Super Zippo," the military judge denied the motion. He ruled that: (1) the affidavit was not knowingly and intentionally false or made with reckless disregard for the truth; (2) there was probable cause to issue the warrant; (3) the search warrant was not overbroad or too general; (4) the search did not exceed the scope of the search warrant; (5) there was no expectation of privacy in the type of information provided by "Super Zippo" and it would have been inevitably discovered; (6) the "Super Zippo" information was not "fruit of the poisonous tree"; and (7) violations of Air Force Regulations concerning coordination with a United States Attorney were not "fatal to this particular search." The military judge also attached written findings to the record.

## 2. Issue II

The second issue asks us to consider whether anal intercourse between a husband and· a wife is constitutionally protected conduct. The facts, as described by two judges of the court below, 1999 WL 305093, who formed a majority on this issue, are as follows:

> The appellant was convicted of assaulting his former wife by grabbing her throat, choking her, and banging her head on the floor. He was also convicted of soliciting her to commit prostitution. According to the appellant's former wife, he told her to prostitute herself because they could use the money she received to pay family bills and that having sex with other men would improve their sexual relationship. She testified that during their marriage prior to the assaults and the prostitution, she refused appellant's requests to engage in this sexual act because she had been forcibly and painfully sodomized while a teenager. Her revulsion and fear of this sexual act was underscored by her testimony that she refused to allow any of the men who paid to have sex with her to perform this sexual act on her. Obviously, after being assaulted and encouraged to have sex with other men by her husband, she had less bargaining power with him than she had with total strangers. Due to the pain she experienced whenever the appellant performed this sexual act, on one occasion she did allow him to videotape in exchange for his promise to stop subjecting her to this violation. Unfortunately, the appellant did not honor his promise.

Unpub. op. at 19.

## DISCUSSION

### A. Standard of Review

 Issues involving the admissibility of evidence are reviewed for an abuse of discretion. *United States v. Johnson*, 46 MJ 8, 10 (1997). Findings of fact will not be overturned unless they are clearly erroneous or

unsupported by the record of trial. *United States v. Richter*, 51 MJ 213, 220 (1999). Conclusions of law will be reviewed *de novo*, and will not be overturned unless the decision was based upon an erroneous view of the law. *Id.*

## B. Issue I

1. *Whether the search warrant violates 28 CFR § 60.1, as applied to the AFOSI by paragraph 6(c) of AFOSI Regulation 124–82.*[2]

Appellant relies upon these provisions to support a claim that the search was unlawful. Specifically, appellant assails OSI's failure to obtain the concurrence of a United States Attorney before obtaining the warrant at issue.

■ First, these provisions do not confer a protection upon appellant enforceable by virtue of the exclusionary rule. Appellant's reasonable expectation of privacy yields, not to coordination between police and prosecutors, but to compliance with the warrant requirement of the Fourth Amendment. The failure to coordinate with a United States Attorney prior to obtaining a warrant issued by a competent Colorado state judge is not unreasonable conduct by law enforcement which serves to violate any of appellant's Fourth Amendment protections. *See United States v. Guzman*, 52 MJ 318, 321 (2000)(Like the Supreme Court in *United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979), this Court refused to apply the exclusionary rule to a violation of a Department of Defense or service directive where the record did not demonstrate that the limitations were "directly tied to the protection of individual rights.").

■ Second, the military judge's findings, which were supported by the testimony of the agents involved, show that the OSI officers did not seek the warrant. Instead, they turned matters over to a civilian law enforcement officer having jurisdiction in El Paso County, the location of the place to be searched and a potential crime. *See* Mil. R.Evid. 315(b)(2) and (h)(4). The El Paso County officer sought the warrant, and he was not subject to any requirement to coordinate with a United States Attorney.

As noted by the court below:

Following their interview of the appellant, the AFOSI informed the local civilian investigators of the nature of the crime they were investigating. They did so, according to their sworn testimony, because the appellant lived off base. Additionally, Falcon AFB is a concurrent jurisdiction installation; therefore, the local authorities had jurisdiction over the entire case, if they chose to investigate the offenses alleged....

. . . .

The appellant further contends that 28 CFR § 60, as applied to the AFOSI by paragraph 6(c) of AFOSI Regulation 124–82 requires the AFOSI to obtain the concurrence of the United States Attorney's Office before requesting a civilian search warrant. The AFOSI did not request the warrant in this case. Rather, they merely participated in a search conducted under the auspices of a civilian search warrant. Therefore, we find that 28 CFR § 60.1 does not apply to the circumstances under which the search warrant in this case was obtained and does not preclude the AFOSI agents' participation in that search.

Unpub. op. at 7 (footnote omitted). We agree.

2. *Whether the Posse Comitatus Act, 18 USC § 1385, was violated.*

■ Appellant contends that the primary purpose of OSI participation was to aid the El Paso officer in the enforcement of Colorado law. Therefore, the participation of OSI agents in the search of his home was in furtherance of civil laws and in violation of the Posse Comitatus Act, which prohibits use

---

2. These provisions authorize federal law enforcement officers, including the AFOSI, to request the issuance of a search warrant and direct that "military agents of the Department of Defense must obtain the concurrence of the appropriate U.S. Attorney's Office before seeking a search warrant."

of military personnel for enforcement of civil law. We disagree.

Appellant fails to consider the continuing military interest in the criminal investigation. Appellant, a person subject to the UCMJ, violated military law by receiving child pornography on a government computer. Appellant "probably" had additional prohibited child pornography at his residence. This crime of possessing child pornography was cognizable under the UCMJ at all times by virtue of appellant's military status. Therefore, we find that there was an independent military interest in the investigation of appellant. *See United States v. Thompson*, 33 MJ 218 (1991), *cert. denied*, 502 U.S. 1074, 112 S.Ct. 972, 117 L.Ed.2d 137 (1992). Therefore, there is no violation of the Posse Comitatus Act.

3. *Whether the search warrant was a general warrant and not based upon probable cause.*

 The affidavit in issue provided probable cause to believe that appellant possessed contraband child pornography in his home. Probable cause is determined by the totality of the circumstances, and is a practical, common sense decision. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Deference is accorded a judge or magistrate making a probable cause determination. *Massachusetts v. Upton*, 466 U.S. 727, 732–33, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984); *Illinois v. Gates, supra*. There is no requirement for a higher standard of probable cause for material protected by the First Amendment; a showing that there is a fair probability that the material sought is obscene is sufficient. *New York v. P.J. Video, Inc.*, 475 U.S. 868, 106 S.Ct. 1610, 89 L.Ed.2d 871 (1986).

 The information contained in the affidavit amply supports probable cause under the totality of the circumstances:

1. The Falcon AFB firewall detected graphic images being accessed on the internet from the base computer network;

2. A base computer was used to access an area denominated, in part, by the word "lolita"—a word associated with child pornography—and the computer was used to download several graphic images;

3. A government network technician began downloading the graphic image being accessed, observed what looked like two nude juvenile females, found the picture disgusting, and discontinued downloading the image;

4. The user of the government computer accessed the internet through "SUPER ZIPPO," an on-line service;

5. The government computer in question was identified, the four persons with access to the computer were interviewed, and appellant admitted using the computer during the time frame at issue but denied accessing the file in question;

6. Appellant initially denied being a member of an on-line service, then later admitted he was a member of "SUPER ZIPPO," and had access to the on-line service from his residence;

7. Appellant admitted having erotica at his residence, but when asked if any of the material contained children, stammered and asked, "What do you mean children?"

This information reasonably shows that appellant accessed child pornography through his on-line server while on duty, had access to the same service at his residence, had erotica at his residence, and was evasive about possessing child pornography at home. Thus, appellant's computer equipment and associated materials, such as discs or printed graphics, would be or would contain evidence of this contraband material. We find "substantial evidence in the record" to support "the decision to issue the warrant." *See United States v. Monroe*, 52 MJ 326, 331 (2000), quoting *Massachusetts v. Upton*, 466 U.S. at 728, 104 S.Ct. 2085.

 Similarly, the warrant issued met the necessary requirements for specificity. "Attachment B" to the actual warrant lists those items subject to search as follows:

1. Photographic images of nude children.

2. Documents pertaining to the on-line service "Super Zippo."

3. Correspondence, diaries, and any other writings, tape recordings, computer files, or letters relating to any nude photographs of juveniles, internet locations for such material, or lists of such files.

4. Video tapes, magazines, books, and other items, which may contain nude images of children.

5. Items of indicia consisting of articles of personal property tending to establish the identity of the person or persons in control of the premises located at ... El Paso County, Colorado, including, but not limited to, digitally stored files on computer disks or hard drives.

The listing provides three categories of items that may be searched for: (1) child pornography; (2) evidence pertaining to appellant's IAP account; and (3) evidence pertaining to identification of persons controlling the premises. This listing is clearly related to the information constituting probable cause. It specifically focuses on sources of child pornography, the computer system and service, and those who may be involved in criminal activity at this address. It is not general or overbroad. *See United States v. Leon,* 468 U.S. 897, 964, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)(Stevens, J., concurring); *United States v. Lacy,* 119 F.3d 742 (9th Cir.1997), *cert. denied,* 523 U.S. 1101, 118 S.Ct. 1571, 140 L.Ed.2d 804 (1998).

4. *Whether the search warrant was obtained as a result of false statements to the state court magistrate judge.*

Mil.R.Evid. 311(g)(2), Manual for Courts–Martial, United States (1995 ed.), provides:

*False statements.* If the defense makes a substantial preliminary showing that a government agent included a false statement knowingly and intentionally or with reckless disregard for the truth in the information presented to the authorizing officer, and if the allegedly false statement is necessary to a finding of probable cause, the defense, upon request, shall be entitled to a hearing. At the hearing, the defense has the burden of establishing by a preponderance of the evidence the allegation of knowing and intentional falsity or reckless disregard for the truth. If the defense meets its burden, the prosecution has the burden of proving by a preponderance of the evidence, with the false information set aside, that the remaining information presented to the authorizing officer is sufficient to establish probable cause. If the prosecution does not meet its burden, the objection or motion shall be granted unless the search is otherwise lawful under these rules.

In light of the findings of fact entered by the military judge, it is clear that the defense did not meet its burden of showing "knowing and intentional falsity or reckless disregard for the truth." *See Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). These findings of fact are binding unless they are clearly erroneous.

 Specifically, the military judge found: "After hearing the evidence, I am even more convinced that the affidavit was not knowingly and intentionally false, nor made with reckless disregard for the truth." We find no basis upon which to conclude that the findings are clearly erroneous.

5. *Whether the warrantless search of appellant's internet account with "Super Zippo" violated the Fourth Amendment and the Electronic Communications Privacy Act.*

Appellant urges that the information obtained from "Super Zippo" falls within the exclusionary rule because it was obtained in violation of the Electronic Communications Privacy Act of 1986 (ECPA), 18 USCA §§ 2510 *et seq.,* or because appellant had a Fourth Amendment privacy interest in the information.

In order to decide this issue, we must first determine where the information obtained from "Super Zippo" falls within the continuum of information available through computer and telecommunication technologies. The ECPA provides a framework to analyze this question: Title I of the Act is entitled "Interception of Communications and Relat-

ed Matters"; Title II of the Act is entitled "Stored Wire and Electronic Communications Transactional Records Access"; and Title III of the Act is entitled "Pen Registers and Trap and Trace Devices." ECPA, Pub.L. No. 99–508, 100 Stat. 1848 (1986).

■ The information obtained from "Super Zippo" was electronic data stored by "Super Zippo" in the form of a log identifying the date, time, user, and detailed internet address of sites accessed by appellant over several months. Hence, it falls within Title II of the ECPA. Section 2703(c) regulates governmental access to a "record or other information pertaining to a subscriber or customer of such service (not including the contents of communications....)" 18 USC § 2703(c)(1)(A). Under the ECPA, the release of such records does not require a warrant. They may also be released upon a court order issued on the "reasonable grounds to believe" standard under § 2703(d). 18 USCA § 2703(c)(1)(B) and (d).

Although neither a warrant nor a court order was obtained, there is no exclusionary rule relief under § 2703. *See United States v. Hambrick,* 55 F.Supp.2d 504, 507 (W.D.Va. 1999); *United States v. Kennedy,* 81 F.Supp.2d 1103, 1110 (D.Kan.2000). If Congress had intended to have the exclusionary rule apply, it would have added a provision similar to the one found under Title III of the statute, concerning intercepted wire, oral, or electronic communications. *See* 18 USC §§ 2516 and 2518(10).

Although suppression is not a remedy under Title II of the ECPA, courts must determine within a constitutional framework whether an accused has a subjective expectation of privacy that society is willing to recognize in the type of information obtained. We tackled this question in *United States v. Maxwell,* 45 MJ 406 (1996). There we found a limited expectation of privacy in e-mail messages sent or received through an IAP.[3] Most importantly, what was at issue in *Maxwell* was the treatment of communications. This case does not involve communications,

but rather is limited to stored transactional records provided in log format without any accompanying text.

The *Hambrick* court found an internet customer to have no reasonable expectation of privacy in personal information supplied to an IAP because the customer knowingly revealed his name, address, credit card number, and telephone number to the IAP and its employees. 55 F.Supp.2d at 508. The information at issue lies somewhere between the type of subscriber information at issue in *Hambrick* and the communications at issue in *Maxwell.*

■ We need not decide what type of privacy interest attaches to the information in this case, however, because we agree with the military judge that a warrant would have inevitably been obtained for these very same records. *See* Mil.R.Evid. 311(b)(2); *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); *United States v. Kozak,* 12 MJ 389 (CMA 1982). In light of this holding, we need not determine whether the information was otherwise admissible. *See* Mil.R.Evid. 314(e) and (k); 316(f).

The OSI agent was aware appellant admitted that "Super Zippo" was his IAP provider. He also knew that "Super Zippo" showed up in records related to the information accessed by appellant from the computer at appellant's military work station. The agent asked "Super Zippo" if a warrant was required, and was informed that corporate counsel had advised management that none was needed. The agent relied on that information and did not pursue a warrant. There is nothing upon which to support a claim that the information would not otherwise have been obtained or that the officers in this case were acting with other than complete good faith in relying upon "Super Zippo's" assertion that they had the authority to release the records without a warrant.

Thus, in the final analysis, the agent asked the person in possession of the information to turn it over to the police. This was done

---

**3.** E-mails are treated differently under the ECPA depending upon how long they remain in storage with an IAP. *See* 18 USCA § 2703(a) (regulating

the disclosure of electronic communications in storage in an electronic communications system for more or less than 180 days).

freely and voluntarily. The person in possession of the information did not demand that a warrant be produced and none was required. Under these circumstances, there is no seizure which could be said to be the result of a constitutional violation of such import as to bring into play any exclusionary rule, whether a statutory or court-made rule. *See* Mil. R.Evid. 314(e).

## ISSUE II

■■■ Appellant alleges that his conviction for engaging in anal sodomy with a former wife is a violation of his fundamental right to engage in private consensual sexual relations without interference and regulation by the government. We disagree.

"The extent to which the constitutional right to privacy prohibits a prosecution for sexual relations within a marital relationship raises important constitutional questions. Any such constitutional right, however, must bear a reasonable relationship to activity that is in furtherance of or supportive of the interests of the marital relationship." *United States v. Thompson*, 47 MJ 378, 379 (1997), *cert. denied*, 523 U.S. 1077, 118 S.Ct. 1523, 140 L.Ed.2d 675 (1998).

We note that the charged acts of sodomy were not discovered as a result of a government investigation into appellant's marital activities, but were brought to the attention of authorities by appellant's former wife during the pornography investigation, who seized on the occasion to initiate a discussion with authorities concerning a pattern of abuse by her husband, which included the charged acts.

The facts of this case make it clear that appellant's acts were not in furtherance of the marriage. Regardless of whether the facts would have been sufficient to prove beyond a reasonable doubt that appellant engaged in forcible sodomy, they clearly demonstrate that the charged acts do not warrant constitutional protection because they were not "in furtherance of or supportive of the interests of the marital relationship." *Id.* Instead, the facts graphically depict a pattern of degradation and depersonalization, of which the acts of sodomy were a part, that appellant visited upon his former wife. Such a pattern falls outside the ambit of conduct that could be considered in furtherance of the marriage for purposes of determining whether the statute should be invalidated on constitutional grounds. In that regard, we emphasize that we are not engaged in a subjective evaluation of the quality of the marriage; rather, our consideration is focused on the reasonable inferences that may be drawn from the record concerning the nature of the charged acts in the context that immediately surrounded their commission.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

SULLIVAN, Judge (concurring in the result):

There was no prejudicial error when the military judge denied appellant's motion to suppress evidence seized from appellant's home and from Super Zippo. Regarding the warrant obtained by the local civilian law enforcement officials to search appellant's home, there was no violation of the Posse Comitatus Act, *see United States v. Thompson*, 33 MJ 218 (CMA 1991), and the totality of the circumstances establish that the magistrate judge had sufficient information to determine that probable cause existed. *See United States v. Monroe*, 52 MJ 326 (2000). Appellant does not have a constitutional reasonable expectation of privacy in the records obtained from Super Zippo. *See United States v. Maxwell*, 45 MJ 406, 418 (1996). Furthermore, the Electronic Communication Privacy Act does not require suppression for failure to comply with its provisions, absent a violation of a constitutional right. *Cf.* 18 USC § 2703(c); *United States v. Thompson, supra; United States v. Thompson*, 936 F.2d 1249 (11th Cir.1991).

The other granted issue involves Article 125, UCMJ, 10 USC § 925, which states:

(a) Any person subject to this chapter who engages in unnatural carnal copulation with another person of the same or opposite sex or with an animal is guilty of sodomy. Penetration, however slight, is sufficient to complete the offense.

(b) Any person found guilty of sodomy shall be punished as a court-martial may direct.

Just as this Court has held that Article 125 prohibits private, heterosexual, consensual oral sex, *see United States v. Henderson*, 34 MJ 174 (1992), so too today the Court holds that anal sex is a violation of the statute. *Cf. United States v. Thompson*, 47 MJ 378 (1997). In the military, the law seems clear—any type of sodomy remains a crime. I will continue to apply the law as written, which makes no mention of a marital exception.