*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————

**UNITED STATES**
Appellant

**v.**

**Jason M. BLACKBURN, Staff Sergeant**
United States Air Force, Appellee

**No. 20-0071**
Crim. App. No. 39397

Argued June 3, 2020—July 24, 2020

Military Judge: Christopher M. Schumann

For Appellant: *Captain Peter F. Kellett* (argued); *Colonel Shaun S. Speranza, Lieutenant Colonel Brian C. Mason,* and *Mary Ellen Payne,* Esq. (on brief).

For Appellee: *Major Meghan R. Glines-Barney* (argued).

Judge RYAN delivered the opinion of the Court, in which Chief Judge STUCKY, and Judges OHLSON and SPARKS, joined. Judge MAGGS filed a separate opinion concurring in the judgment.

———————

Judge RYAN delivered the opinion of the Court.

A general court-martial convicted Appellee, contrary to his pleas, of one charge and specification of sexual abuse of a child and one charge and specification of indecent recording in violation of Articles 120b and 120c, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920b, 920c (2012). The panel sentenced Appellee to a bad-conduct discharge, confinement for five years, forfeiture of all pay and allowances, and reduction to E-1. The convening authority approved all but the adjudged forfeitures, deferring the mandatory forfeiture of pay in the amount of $728.00 until the date of action and waiving the mandatory forfeiture of pay and allowances for six months, release from confinement, or expiration of term of service, whichever was sooner.

The United States Air Force Court of Criminal Appeals (AFCCA) affirmed one charge and specification of sexual abuse of a child but set aside one charge and specification of

indecent recording and the sentence and authorized a re-hearing. *United States v. Blackburn*, No. ACM 39397, 2019 CCA LEXIS 336, at \*54, 2019 WL 3980730, at \*18 (A.F. Ct. Crim. App. Aug. 22, 2019).

The Judge Advocate General of the Air Force then certified the following issues pursuant to Article 67(a)(2), UCMJ, 10 U.S.C. § 867(a)(2) (2018):

> I. Whether under Military Rule of Evidence 311(d)(2)(A), Appellee waived a basis for suppression that he did not raise at trial?
>
> II. Whether the Air Force Court of Criminal Appeals erred in finding the military judge abused his discretion when he denied the motion to suppress digital evidence pursuant to the good faith exception?
>
> III. Whether the military judge properly denied the motion to suppress digital evidence pursuant to Military Rule of Evidence 311(a)(3), a determination not reviewed by the Air Force Court of Criminal Appeals?

The first question we answer in the negative. Answering the second question in the affirmative, we need not reach the third issue. We therefore remand to the AFCCA for further review under Article 66, UCMJ, 10 U.S.C. § 866 (2018).

## I. Background

On April 20, 2016, while undressing to shower, Appellee's twelve-year-old stepdaughter, ES, found a camcorder in the bathroom. The camcorder was partially covered, but the lens was exposed, aimed at the shower, and a red light indicated the device was recording. On the device, she found an eleven-minute video of her in the bathroom, as well as another video she could not access. Appellee entered the bathroom, saw ES reviewing the video, apologized, and claimed it was a prank. ES then told her stepmother, LS, and her father, JS, that she found Appellee's camcorder recording her in the bathroom, and LS contacted the Air Force Office of Special Investigations (AFOSI).

AFOSI immediately responded with "an all hands on deck" mentality and assembled an investigative team that included then special agent Technical Sergeant D (TSgt D).

After speaking with LS, security forces apprehended Appellee due to the risk that evidence might be tampered with or destroyed.

AFOSI then interviewed ES, and TSgt D listened in. She said Appellee often came into the bathroom while she showered, but only on nights when her biological mother MB, Appellee's wife, was not home. On one such occasion, Appellee aimed a camera over the curtain rod but later claimed he was only joking. He showed the camera to ES afterward and said it was not recording. Appellee had previously asked ES to send him pictures of her in a recently purchased shirt, and she complied. He also once asked ES for nude pictures before deploying, but ES declined.

AFOSI interviewed MB, LS, and JS. MB said Appellee was "tech savvy" and had multiple computers in their home that they used regularly. LS said ES told her Appellee slept in her bed at least once and frequently texted her asking for pictures of herself and if she was alone. No one stated that Appellee backed up media to his computers or connected his camcorder to any of his devices.

In accordance with AFOSI practices, TSgt D then briefed the military magistrate over the phone, with a judge advocate on the line, regarding the case. TSgt D later prepared a written affidavit reflecting the conversation and submitted it within the required time frame.[1] The affidavit closed with "[b]ased on my experience, training and the facts listed above, I believe evidence proving [Appellee]'s intent to manufacture child pornography is located within his residence." TSgt D requested and received authorization to search and seize "any and all cameras or electronic media to include hard drives, SD cards, compact discs, computers and tablet computers that could contain evidence of child pornography within [Appellee]'s residence." Upon executing the search authorization, AFOSI seized approximately 300 items, including Appellee's computer. A search of this computer found "several videos of [ES] in the bathroom."

---

[1] The written search authorization was approved by the military magistrate on April 23, 2016.

Appellee moved to suppress evidence obtained pursuant to the search authorization, "particularly videos found on a personal desktop computer." Relying heavily on *United States v. Nieto*, 76 M.J. 101 (C.A.A.F. 2017), he argued that the search authorization was neither supported by probable cause nor covered by the good faith exception, as the affidavit failed to show a "particularized nexus" between the camcorder and the other electronics.

In the written motion to suppress, Appellee highlighted that when the search authorization was requested, "there was no showing [that Appellee] actually downloaded images from the camcorder to his computer . . . . In fact, the affidavit did not even mention the existence of a computer. In this sense, the affidavit clearly lacked sufficient information to tie the camcorder to the other seized electronics." Furthermore, the "agents knew they had no evidence connecting [Appellee]'s camcorder to his computer, yet they sought a search authorization for it anyway."

TSgt D testified at the suppression hearing that he requested authorization to search and seize electronics other than the camcorder because people typically transfer camcorder footage to other devices, but he did not recall relaying this specific point to the magistrate. The magistrate testified that she thought inclusion of the other devices was warranted because there were multiple instances of Appellee asking ES for pictures and recording ES in the bathroom. She found these occurrences evidenced a possible pattern of behavior that, when coupled with the commonsense understanding that people tend to transfer camcorder videos onto other devices for subsequent viewing, warranted a broader scope of authorization. She "absolutely" felt that Appellee may have backed up some of his media. The magistrate could not recall whether, on the phone, TSgt D said Appellee ever connected the camcorder to another device, possessed child pornography, or visited such websites.

Appellee countered with *Nieto*, arguing that a showing was needed "linking the computer to the instrumentality of the crime," and "that particularized nexus is missing here because the . . . camcorder[] had no connection to the computer that [AF]OSI or the magistrate knew about at the time that she granted the search authorization." TSgt D did

not brief the magistrate on the camcorder's specifications, nor did he know if the files on the device were transferrable to a computer. Further, there was no evidence Appellee produced or disseminated child pornography, nor did TSgt D tell the magistrate he believed that there was child pornography on Appellee's computer.

The military judge denied the motion to suppress. Acknowledging his decision was a "very close call," he agreed that the search authorization lacked probable cause under *Nieto* but found the good faith exception applied.

The military judge found none of the four bars to the good faith exception under *United States v. Leon*, 468 U.S. 897, 923 (1984), applied, stating, as relevant here, that the magistrate was not misled by the affidavit nor did TSgt D give false information or recklessly disregard the truth.

The military judge then found each element of the exception satisfied. First, the magistrate was competent. Second, the agents would be objectively reasonable in believing the magistrate had a "substantial basis" for probable cause: The search request "was not a 'bare bones' affidavit," TSgt D did not "intentionally or recklessly omit[] or misstate[] any information," and the magistrate had a "common sense belief and understanding regarding the likelihood of an individual transferring data from a camcorder to another media device when she approved the request for a search authorization." Third, the magistrate did not rubber-stamp the request; she testified that her conversation with TSgt D was consistent with the contents of the written affidavit and a judge advocate participated in the discussion.

On appeal, the AFCCA agreed that the absence of a nexus between the camcorder and other electronic devices foreclosed a finding of probable cause. 2019 CCA LEXIS 336, at *43–44, 2019 WL 3980730, at *15.

However, the AFCCA found that the military judge erred in applying the good faith exception to the exclusionary rule and thus abused his discretion in denying the motion to dismiss. 2019 CCA LEXIS 336, at *43–44, 2019 WL 3980730, at *15. The Court disagreed that "TSgt D[] did not recklessly omit or misstate any information" because "[n]one of the information available to the AFOSI agents supported

a conclusion that the images captured on the camcorder depicted ES naked." 2019 CCA LEXIS 336, at *46, 2019 WL 3980730, at *16. Furthermore, "the search authorization in this case was premised on the search for child pornography" but Appellee's charge was for indecent recording, which does not require sexually explicit images. 2019 CCA LEXIS 336, at *47, 2019 WL 3980730, at *16. The AFCCA further noted that "[i]njecting a reference to child pornography into the request for search authorization at best skewed the facts that were known at the time, and at worst amounted to a reckless misstatement of those facts." 2019 CCA LEXIS 336, at *47, 2019 WL 3980730, at *16. The compilation of this conduct, according to the AFCCA, amounted to "recklessly omitting or misstating the information to obtain the authorization," which foreclosed the application of the good faith exception. 2019 CCA LEXIS 336, at *50, 2019 WL 3980730, at *17.

## II. Discussion

### A. Waiver

The Government first argues the lower court erred by reversing the military judge's denial of the motion to suppress on a ground not preserved by Appellee: TSgt D recklessly omitted or misstated information to obtain the authorization. While a close call, we find no waiver here.

This Court reviews de novo whether an accused has waived an issue. *United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017). Suppression arguments not raised at trial are waived under Military Rule of Evidence (M.R.E.) 311(d)(2)(A). *See United States v. Perkins*, 78 M.J. 381, 389–90 (C.A.A.F. 2019). Preservation requires a "particularized objection." *Id.* at 390 (internal quotation marks omitted) (citation omitted).[2] When constitutional rights are at issue, we have applied a presumption against finding waiver. *United States v. Jones*, 78 M.J. 37, 44 (C.A.A.F. 2018). In *Perkins*, we found that the appellant waived the argument that the

---

[2] This requirement ensures the government has the opportunity to present relevant evidence and develop a full record for review on appeal. 78 M.J. at 390 (citing *United States v. Stringer*, 37 M.J. 120, 132 (C.M.A. 1993) (Wiss, J., concurring in the result)).

evidence must be suppressed[3] because the issuing authority rubber-stamped the request, where the argument at trial was that "the search authorization was unconstitutionally vague, was lacking in probable cause, and failed to meet the particularity requirement of the Fourth Amendment." 78 M.J. at 389–90 (internal quotation marks omitted) (citation omitted). This fell far short of the "particularized objection" required to preserve the "rubber-stamp" issue. *Id.* (internal quotation marks omitted) (citations omitted).

The situation is more nuanced here. The good faith exception is unavailable when the magistrate "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Leon*, 468 U.S. at 923 (citing *Franks v. Delaware*, 438 U.S. 154 (1978)). Though definitions of "reckless disregard" in this context range from sheltering "obvious reasons to doubt the veracity of the allegations," *United States v. Cowgill*, 68 M.J. 388, 392 (C.A.A.F. 2010) (internal quotation marks omitted) (quoting *United States v. Jones*, 208 F.3d 603, 607 (7th Cir. 2000)), to "withhold[ing] a fact . . . that any reasonable person would have known . . . was the kind of thing the judge would wish to know," *id.* (internal quotation marks omitted) (quoting *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000)), "reckless disregard" must refer to "something more than negligence," *id.*

The Government argues that "[a]t no point did Appellee argue that the good faith exception could not apply because law enforcement provided the magistrate with an affidavit that 'recklessly omitted or misstated information,' as AFCCA found." Brief for Appellant at 15–16, *United States v. Blackburn*, No. 20-0071 (C.A.A.F. Jan. 16, 2020). It further complains that the lack of "allegation at trial or on appeal that a deliberately false or reckless statement was presented to a military magistrate" deprived the Government of the opportunity to respond to particularized objections. *Id.*

---

[3] *See id.* at 390 n.13 (rubber-stamping is not "merely an exception to the good faith exception," and is a basis to invalidate a search authorization "the accused can argue in the first instance").

at 13–14. We disagree. While a particularized objection must be made, and the talismanic words "false" or "reckless disregard of the truth" were not used, the record shows Appellee in fact alleged that the Government provided false information to the magistrate.

In his written motion, Appellee argued the probable cause affidavit was "completely absent" of any nexus between the camcorder and other devices; the affidavit "clearly lacked sufficient information" of any connection; and the agents "knew they had no evidence connecting [Appellee]'s camcorder to his computer, yet they sought a search authorization for it anyway." At the suppression hearing, Appellee also argued that TSgt D never gave the magistrate evidence that Appellee produced or disseminated child pornography or said whether any child pornography was believed to reside on Appellee's computer. Further, while TSgt D's search authorization request noted his belief that "evidence proving . . . intent to manufacture child pornography is located within [Appellee's] residence," and trial counsel argued before the military judge that AFOSI "acted in good faith" because the circumstances reasonably led them to believe Appellee was manufacturing child pornography,[4] Appellee complained that nothing in the affidavit evidenced "sexually explicit conduct that would merit child pornography," and the "mere fact that [AFOSI] decides to slap that on an affidavit does not make this a child pornography case." Though somewhat subtle, this theory was inherent to the defense argument, and the defense's arguments as a whole demonstrate an accusation of at least recklessness in the search authorization request, which adequately preserved this issue on appeal.

---

[4] More bluntly, trial counsel stated at the suppression hearing:

> I know there's been some back and forth about whether [ES] was nude or not, but the ground hitting, no kidding truth is the allegation that came to [AFOSI] was [Appellee] had been filming his 12 year old daughter while she was undressed, while she was nude, and that gives them rise to say, "Hey, it looks like he could be manufacturing child pornography."

Moreover, the military judge addressed this point directly, finding no evidence that TSgt D provided false information or recklessly disregarded the truth. This, combined with Appellee's arguments in the written motion and at the hearing—which mirror his arguments here on appeal—both distinguishes the present case from *Perkins* and illustrates that Appellant was not deprived of the opportunity to respond to the allegation of recklessness.

## B. The AFCCA erred in finding the military judge abused his discretion in applying the good faith exception

This Court reviews a military judge's denial of a motion to suppress evidence for abuse of discretion. *United States v. Leedy*, 65 M.J. 208, 212 (C.A.A.F. 2007). An abuse of discretion occurs when a military judge's "findings of fact are clearly erroneous or his conclusions of law are incorrect." *United States v. Erikson*, 76 M.J. 231, 234 (C.A.A.F. 2017) (internal quotation marks omitted) (quoting *United States v. Olson*, 74 M.J. 132, 134 (C.A.A.F. 2015)). When reviewing a lower court's decision on a military judge's ruling, we "typically have pierced through that intermediate level and examined the military judge's ruling, then decided whether the Court of Criminal Appeals was right or wrong in its examination of the military judge's ruling." *United States v. Shelton*, 64 M.J. 32, 37 (C.A.A.F. 2006) (internal quotation marks omitted) (citation omitted).

In reviewing a ruling on a motion to suppress, the evidence is considered in the light most favorable to the party that prevailed on the motion. *See, e.g.*, *Leedy*, 65 M.J. at 213. The question whether TSgt D provided evidence that was intentionally false or with a reckless disregard for the truth is a question of fact, which we review for clear error. *United States v. Allen*, 53 M.J. 402, 408 (C.A.A.F. 2000). "A deferential standard of review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." *Massachusetts v. Upton*, 466 U.S. 727, 733 (1984).

The Fourth Amendment safeguards "[t]he right of the people to be secure in their persons, houses, papers, and effects." U.S. Const. amend. IV. This protects against "unrea-

sonable searches and seizures" and requires warrants to be supported by probable cause. *Id.* Absent probable cause, this Court typically applies the exclusionary rule. *See* M.R.E. 311(a)(3); *Nieto*, 76 M.J. at 106.

However, under the good faith exception in M.R.E. 311(c)(3), the results of a search authorization in fact unsupported by probable cause will not require exclusion if: (1) the magistrate had authority to grant the request; (2) the magistrate had a substantial basis for finding probable cause; and (3) law enforcement reasonably and in good faith relied on the authorization.[5] *Nieto*, 76 M.J. at 107. The second prong is met when the agents have an objectively reasonable belief that the magistrate had a substantial basis for probable cause. *Perkins*, 78 M.J. at 387–88. As discussed *supra* Part II.A., the exception is unavailable where the magistrate was "misled by information" law enforcement "knew was false or would have known was false except for [their] reckless disregard of the truth." *Leon*, 468 U.S. 897 at 923.[6]

We disagree with the AFCCA's finding of recklessness. First, the lower court failed to demonstrate that the military judge's finding of fact on this point was clearly erroneous or to consider that it was bound to consider the evidence in the light most favorable to the party that prevailed on the motion at trial.

Second, though AFOSI had no direct evidence of child pornography, they did have ES saying that Appellee surreptitiously recorded her preparing to shower, often entered the room while she showered, and asked her for naked pictures.

---

[5] *United States v. Carter* describes this third element as turning on whether the search authorization was facially defective or whether the police knew the magistrate simply rubber-stamped it. 54 M.J. 414, 421 (C.A.A.F. 2001).

[6] The Supreme Court in *Franks*, on which *Leon* built its "reckless disregard" exception, explained that "[b]ecause it is the magistrate who must determine independently whether there is probable cause, it would be an unthinkable imposition upon his authority if a warrant affidavit, revealed after the fact to contain a deliberately or reckless false statement, were to stand beyond impeachment." 438 U.S. at 165 (citations omitted).

While AFOSI's use of the phrase "child pornography" may have constituted negligence, we agree that it did not "rise to the level of a reckless disregard for the truth." 2019 CCA LEXIS 336, at *57–58, 2019 WL 3980730, at *20 (Lewis, J., concurring in part and dissenting in part and in the result).[7]

Third, MB told AFOSI that Appellee was "tech savvy" and had multiple computers at home that were regularly used. Along with TSgt D's understanding that people tend to transfer camcorder videos to other devices, this further counsels against a finding of recklessness. *See Nieto*, 76 M.J. at 106 (officer's experience may be useful in establishing nexus); *cf. Leedy*, 65 M.J. at 213 (probable cause looks at "practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act" (internal quotation marks omitted) (citation omitted)).

Fourth, legal counsel was on the call between TSgt D and the magistrate, and the record reveals no objections from him. *See Perkins*, 78 M.J. at 388 (agent's reliance on lawyers' advice "most significant[]" in determining objectively reasonable belief in substantial basis for probable cause under M.R.E 311(c)(3)(B)).

---

[7] Indeed, indecent recording—with which Appellee ultimately was charged—and child pornography are offenses that might easily cover the same acts. *Compare Manual for Courts-Martial, United States* pt. IV, para. 45c.a.(a)(2) (2012 ed.) (prohibiting "knowingly . . . record[ing] . . . the private area of another person, without that other person's consent and under circumstances in which that other person has a reasonable expectation of privacy"), *and* para. 45c.a.(c)(2) (defining " 'private area' " as "the naked or underwear-clad genitalia, anus, buttocks, or female areola or nipple"), *with* para. 68b.b.(4)(a) (prohibiting "knowingly and wrongfully produc[ing] child pornography"), *and* para. 68b.c.(1) (defining " '[c]hild pornography' " as "material that contains either an obscene visual depiction of a minor engaging in sexually explicit conduct or a visual depiction of an actual minor engaging in sexually explicit conduct"). The affidavit might simply reflect "a poor understanding of when a depiction of a 12-year-old girl in some state of undressing or depicted showering would meet the legal definition of sexually explicit conduct." 2019 CCA LEXIS 336, at *58, 2019 WL 3980730, at *20 (Lewis, J., concurring in part and dissenting in part and in the result).

Lastly, we agree with the AFCCA separate opinion that the magistrate's testimony counters the conclusion that she was misled by the child pornography references. 2019 CCA LEXIS 336, at *58–59, 2019 WL 3980730, at *20 (Lewis, J., concurring in part and dissenting in part and in the result). The magistrate took into consideration the "seriousness of the allegation," the seeming pattern of behavior involving recording devices, the request for naked pictures, and her independent understanding that camcorder videos are typically transferred to other electronic devices.

Even if there were not a sufficient nexus for probable cause, AFOSI's belief that the magistrate had a substantial basis for probable cause was reasonable. *Nieto* is distinguishable. There, the appellant confessed to recording occupants of latrines on his cell phone, and a search authorization was issued for both that device and a laptop despite the agent "not know[ing] whether the files on the cell phone were transferrable to the laptop," and despite the fact that videos taken on a cell phone are generally viewed on that same device. 76 M.J. at 104, 108. Here, TSgt D and the magistrate's commonsense understanding of camcorders supported their independent conclusions that the recordings were transferable to computers. This understanding was not "technologically outdated" as the agent's understanding of cell phones was in *Nieto*. *Id.* at 107. Furthermore, in *Nieto*, the appellant was deployed and his "ownership of the laptop in question was predicated on suspect information and credited to an unknown source," *id.* at 108, whereas here Appellee was a noncommissioned officer stationed with his family at an Air Force base within the continental United States, so it was certainly reasonable for the magistrate to assume that the family had a computer that Appellee used, and then for AFOSI to reasonably conclude that the magistrate found a connection between the camcorder and a family computer.

The requisites for application of the good faith exception are satisfied here. The magistrate was competent, AFOSI's belief in her substantial basis for probable cause was reasonable, and she did not rubber-stamp the request. The AFCCA erred in finding the military judge abused his discretion.

12

## III. Decision

The judgment of the United States Air Force Court of Criminal Appeals is affirmed as to the Specification of Charge I for sexual abuse of a child. It is reversed as to setting aside the finding of guilty for the Specification of Charge II for indecent recording and reversed as to setting aside the sentence. The record is returned to the Judge Advocate General of the Air Force for remand to the AFCCA for further review under Article 66, UCMJ, 10 U.S.C. § 866 (2018).[8]

---

[8] In light of the judgment of this Court, Appellee's motion for appropriate relief is denied as moot. Appellee's Motion for Appropriate Relief at 1, *United States v. Blackburn*, No. 20-0071 (C.A.A.F. Mar. 3, 2020).

Judge MAGGS, concurring in the judgment.

Certified Issue I is "[w]hether under Military Rule of Evidence 311(d)(2)(A), Appellee waived a basis for suppression that he did not raise at trial." The asserted basis for suppression is that the Government recklessly misstated or omitted information in its application for a search authorization and therefore cannot rely on the good faith exception to the exclusionary rule in Military Rule of Evidence (M.R.E.) 311(a). The Court answers Certified Issue I in the negative. I respectfully disagree. A review of the record shows that Appellee waived the basis for suppression at issue. Despite our disagreement on this point, I concur in the Court's judgment that the case should be reversed and remanded to the United States Air Force Court of Criminal Appeals (AFCCA) for further review under Article 66, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866 (2018).

## I. Certified Issue I

Before trial, Appellee asked the military judge to suppress all evidence resulting from the search and seizure of his electronics, including videos found on his personal desktop computer. Appellee made several arguments in support of his request. One of these arguments concerned the good faith exception to the exclusionary rule. Appellee contended that an agent of the Air Force Office of Special Investigations (AFOSI) could not have relied in good faith on a search authorization because the military magistrate who issued the search authorization did not have a substantial basis for determining the existence of probable cause. Appellee *did not* make the distinct argument, upon which he now relies, that the AFOSI agent failed to act in good faith because he recklessly misstated or omitted information when seeking a search authorization from the military magistrate. Accordingly, Appellee waived this basis for suppression and cannot raise it on appeal.

### A. The Good Faith Exception and Waiver

An accused might raise a variety of objections when the government asserts the good faith exception to the exclusionary rule. Depending on the facts, the accused might argue that the government has not established one or more of

the elements of the good faith exception as listed in M.R.E. 311(c)(3) and interpreted by this Court. This rule provides:

> Evidence that was obtained as a result of an unlawful search or seizure may be used if:
>
> (A) the search or seizure resulted from an authorization to search, seize or apprehend issued by an individual competent to issue the authorization under Mil. R. Evid. 315(d) or from a search warrant or arrest warrant issued by competent civilian authority;
>
> (B) the individual issuing the authorization or warrant had a substantial basis for determining the existence of probable cause; and
>
> (C) the officials seeking and executing the authorization or warrant reasonably and with good faith relied on the issuance of the authorization or warrant. Good faith is to be determined using an objective standard.[1]

*Id.* Additionally, again depending on the facts, the accused might argue that the good faith exception does not apply for any of four reasons that this Court identified in *United States v. Lopez*, 35 M.J. 35 (C.M.A. 1992), based on the Supreme Court's interpretation of the Fourth Amendment in *United States v. Leon*, 468 U.S. 897 (1984). The Court in *Lopez* stated:

> [1] [T]he good-faith exception will not apply when part of the information given to the authorizing official is intentionally false or given with "reckless disregard for the truth." [2] It will also not apply where "no reasonably well trained officer should rely on the warrant." [3] The exception also will not apply when the "affidavit [is] 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " [4] Finally, it

---

[1] We have interpreted M.R.E. 311(c)(3)(B) to require that the law enforcement official claiming to have acted in good faith had to have an "objectively reasonable belief that the magistrate [issuing the search authorization] had a 'substantial basis' for determining the existence of probable cause." *United States v. Perkins*, 78 M.J. 381, 387 (C.A.A.F. 2019) (quoting *United States v. Carter*, 54 M.J. 414, 422 (C.A.A.F. 2001)).

will not apply when the authorization "may be so facially deficient—*i.e.,* in failing to particularize the place to be searched or the things to be seized— that the executing officers cannot reasonably presume it to be valid."[2]

35 M.J. at 41–42 (fifth alteration in original) (quoting *Leon*, 468 U.S. at 923).

The AFCCA determined that the good faith exception did not apply because this case fell within the first circumstance identified in *Lopez* for when the good faith exception cannot apply. Specifically, the AFCCA concluded that the Government did "recklessly omit or misstate the information [submitted] to obtain a search authorization." *United States v. Blackburn,* No. ACM 39397, 2019 CCA LEXIS 336, at *50, 2019 WL 3980730, at *17 (A.F. Ct. Crim. App. Aug. 22, 2019) (unpublished). Certified Issue I turns on whether Appellee raised this particular objection at trial. If Appellee did not raise it, then he waived it under M.R.E. 311(d)(2)(A), which provides: "When evidence has been disclosed prior to arraignment . . . the defense must make any motion to suppress or objection under this rule prior to submission of a plea. . . . Failure to so move or object constitutes a waiver of the motion or objection." Applying M.R.E. 311(d)(2)(A), this Court has held that an accused must make a "particularized objection" to the admission of evidence to preserve the objection. *Perkins*, 78 M.J. at 390 (internal quotation marks omitted) (quoting *United States v. Robinson*, 77 M.J. 303, 307 & n.6 (C.A.A.F. 2018); *United States v. Stringer*, 37 M.J. 120, 125 (C.M.A. 1993)). My review of the record leads me to conclude that Appellee did not make the particularized objection upon which he now relies in either his written suppression motion or during oral argument on the motion.

### B. Appellee's Written Suppression Motion

In his written motion to suppress the evidence obtained during the authorized search, Appellee made four particularized arguments, which he summarized as follows:

---

[2] The third reason identified in *Lopez* overlaps with M.R.E. 311(c)(3)(B) as that provision has been interpreted by this Court.

[1] The digital evidence found on [Appellee's] computer should be suppressed because the search was not supported by probable cause and the search authorization was overbroad. [2] The good-faith exception does not apply because, under [*United States v. Nieto*, 76 M.J. 101 (C.A.A.F. 2017)], the military magistrate did not have a substantial basis for determining probable cause existed. [3] Further, the inevitable discovery rule does not apply because investigators had no information and were pursuing no leads which would have led them to videos on [Appellee's] *desktop*. [4] Finally, the exclusion of this evidence results in appreciable deterrence of future unlawful searches and the benefits of such deterrence would outweigh the costs to the justice system.

In making these four arguments, Appellee nowhere asserted—either explicitly or implicitly—that the Government recklessly misstated or omitted information in its submission to the military magistrate. Of Appellee's four arguments, only the second concerned the good faith exception to the exclusionary rule.[3] This argument addressed only the requirements of M.R.E. 311(c)(3)(B) and the third circumstance identified in *Lopez* in which the good faith exception cannot apply. Specifically, Appellee asserted that the military magistrate did not have a substantial basis for determining probable cause because "the military magistrate had no facts to draw a nexus between [Appellee's] camcorder and his desktop computer." Appellee added: "On even better facts for the government, [the United States Court of Appeals for the Armed Forces] ruled in *Nieto* that the good faith exception did not apply because the military magistrate had no substantial basis for determining probable cause existed."

---

[3] The first argument addressed M.R.E. 311(a)(2), which provides for the exclusion of evidence from an unlawful search, including a search made without probable cause. The third argument concerned M.R.E. 311(c)(2), which creates an exception to the exclusionary rule in M.R.E. 311(a). The fourth argument concerned M.R.E. 311(a)(3), which provides that evidence is to be excluded only if the benefits of deterring unlawful searches outweigh the costs to the justice system.

In *United States v. Nieto*, two soldiers alleged that the appellant had used his cell phone to record them in the latrine, and investigators then sought and received authorization from a military magistrate to search and seize the appellant's cell phone and laptop. 76 M.J. at 103–04. This Court held that there was no probable cause to search the laptop and that the evidence obtained from the laptop should have been suppressed under the exclusionary rule in M.R.E. 311(a). *Id.* at 107–08. The Court held that the good faith exception to the exclusionary rule did not apply because the requirement in M.R.E. 311(c)(3) was not met. *Id.* at 108. The Court reasoned that "the military magistrate was not provided with substantive oral information linking [Appellee's] misconduct to the laptop." *Id.* There was no allegation in *Nieto*, and no allegation in Appellee's written motion in this case, that the investigators in either case had intentionally or recklessly provided false information to the military magistrate.

### C. Oral Argument on Appellee's Motion

During oral argument on the suppression motion, defense counsel generally adhered to the contentions in Appellee's written motion. Addressing the good faith exception to the exclusionary rule, defense counsel asserted:

> Why am I asking you to suppress this [sic] electronics? No probable cause and that search authorization was overbroad. And so with that in my mind, we next fail—or we move on to the other saving graces here, the good faith exception. Sir, I can dispense with this one pretty quickly—that was brought up in *Nieto* as well—you can't use the good faith exception if the magistrate didn't have a substantial basis for probable cause. That is a required finding in order to use the good faith exception.

In this passage, defense counsel was again addressing the requirements of M.R.E. 311(c)(3)(B) and the third circumstance identified in *Lopez* in which the good faith exception cannot apply. Defense counsel was asserting that the AFOSI agents could not have acted in good faith because the military magistrate did not have a substantial basis for conclud-

ing that there was probable cause.[4] Defense counsel did not contend that the investigators had recklessly omitted or misstated information in their submission to the military magistrate.

Because defense counsel never made such an argument, trial counsel also did not address the question of whether the investigators misled the military magistrate when trial counsel discussed the issue of good faith. Instead, trial counsel simply responded to Appellee's argument under M.R.E. 311(c)(3)(B) by asserting that the investigators had a reasonable belief that the military magistrate had a substantial basis to issue the search authorization. Trial counsel argued:

> *They acted in good faith, they acted on what they thought was a valid search authorization given by the magistrat*e . . . . I know there's been some back and forth about whether she was nude or not, but the ground hitting, no kidding truth is the allegation that came to them was Sergeant Blackburn had been filming his 12 year old daughter while she was undressed, while she was nude, and that gives them rise to say, "Hey, it looks like he could be manufacturing child pornography." Additionally, he's requesting these nude photos of her as well. So in their minds they're thinking, "Okay, this is what we need to take," *so they're acting in good faith, acting on what they believe was reasonable when they went and did that seizure.*

Emphasis added.

Appellee, however, asserts on appeal that his defense counsel did raise the objection at issue at two other points during oral argument on the motion. First, he contends that defense counsel argued that "the identification of child pornography as the alleged crime was inflammatory and the

---

[4] As explained above, we have interpreted M.R.E. 311(c)(3)(B) not to require the military magistrate to have a substantial basis for search authorization but for the *law enforcement agent* seeking the search authorization to have a reasonable belief that the military magistrate had a substantial basis to issue the search authorization. *Perkins*, 78 M.J. at 387.

agents were not aware of any information which met the elements of the offense." In support of this position, Appellee cites the following passage from the oral argument:

> The government did not charge possession, viewing, or production of child pornography. And, sir, if you look at that evidence, you look at what's in the affidavit, none of that is sexually explicit conduct that would merit child pornography, that label. The mere fact that OSI decides to slap that on an affidavit does not make this a child pornography case . . . .

I do not believe that the quoted passage shows that Appellee raised his current objection that the Government had recklessly misstated or omitted information in its submission to the military magistrate. Instead, the quoted passage concerned an argument about which precedents to follow on the issue of probable cause.

An examination of the record reveals the following sequence of events. In Appellee's written motion to suppress the evidence, as noted above, Appellee argued that the military judge should follow *Nieto* and conclude that there was no probable cause for the military magistrate to authorize the search of Appellee's computers. In the Government's written response, the Government attempted to distinguish *Nieto* and to liken Appellee's case to three other cases in which this Court or other courts had upheld authorizations to search an accused's computer for child pornography.[5] During subsequent oral argument, defense counsel attempted to distinguish those three cases by arguing that they involved child pornography while this case did not. Defense counsel asserted: "This is not a child pornography case." The quoted passage above then immediately followed. Defense counsel afterward asserted:

> And Your Honor can leave it at that and we are right back to where we started with *Nieto*. Howev-

---

[5] The three decisions cited by the Government were *United States v. Lancina*, No. NMCCA 201600242, 2017 CCA LEXIS 436, 2017 WL 2829303 (N-M. Ct. Crim. App. 2017), *United States v. Clayton*, 68 M.J. 419 (C.A.A.F. 2010), and *United States v. Allen*, 53 M.J. 402 (C.A.A.F. 2000).

> er, if you consider that at all, if you look at any of
> the cases cited in the government's motion, I just
> want you to know that they are distinguishable
> from this case.

The record further shows that the military judge understood the question was whether *Nieto* was distinguishable on this issue of probable cause. The military judge stated: "To me the issue is probable cause, nexus. What's specifically charged, criminally, is not as critical as . . . what we're talking about here as far as nexus and probable cause." Accordingly, the passage quoted by Appellee had nothing to do with the objection that Appellee now asserts. Instead, Appellee's point in that passage that this case is not about child pornography despite the assertion in the affidavit was a *counterargument* to the Government's attempt to distinguish *Nieto* by citing three cases that did involve child pornography; it was not the *independent* argument that Appellee is now advancing that the Government recklessly omitted or misstated information.

Second, Appellee argues that his counsel preserved his current objection when he argued that the Government failed to prove "the technical specifications of the camcorder, and specifically if files could be transferred from the camcorder to other electronic devices." I disagree. A review of the record shows the following sequence of arguments and counterarguments. As described previously, Appellee argued in his written motion that the evidence should be suppressed because there was no probable cause based on *Nieto*. In response, in addition to citing the three cases mentioned above, the Government also asserted that *Nieto* was distinguishable because the recording device used in this case was not a cell phone (as in *Nieto*) but instead "a camera, something with typically low storage, leaving people to transfer the data taken to computers."

During oral argument, defense counsel disputed the distinction between a cell phone and the camcorder, asserting that the AFOSI agent "didn't know the storage capacity of this camcorder" and that the camcorder at issue in fact "had an eight gigabyte storage." Defense counsel added: "That's a lot of storage. Many cell phones have a similar amount of storage." Defense counsel concluded by asserting: "The gov-

ernment's entire case hangs on this supposition that people just back up things [from] their camcorder. That's it, sir, and that's not good enough in light of recent case law." Again, the entire argument concerned probable cause and the application of the *Nieto* precedent. The argument was not that the AFOSI agent had acted other than in good faith because he recklessly omitted or misstated information.

### D. The Military Judge's Ruling

The military judge denied the motion to suppress the evidence. He agreed with Appellee that the Government had failed to show probable cause based on *Nieto* because the AFOSI agent "did not provide a particularized nexus between the camcorder and the accused's laptop or other electronic media devices." But the military judge agreed with the Government that the evidence was admissible under the good faith exception to the exclusionary rule. In reaching this conclusion, the military judge considered all of the requirements of M.R.E. 311(c)(3). The military judge also addressed the four circumstances that this Court identified in *Lopez* for when the good faith exception cannot apply, asserting that "[t]hose circumstances are not applicable in this case." Cursorily addressing the first circumstance, the military judge stated from the bench: "There is no evidence that the magistrate was 'misled by information in the affidavit' or that [the AFOSI agent] provided false information or showed a reckless disregard for the truth." The military judge repeated this statement with essentially the same words in his written opinion.

Appellee argues that the objection he now asserts was not waived because the military judge made the quoted statements. I disagree. Under M.R.E. 311(d)(2)(A), as interpreted in *Perkins*, the accused waives a basis for suppression unless the accused makes a *particularized* objection. The military judge's comments do not indicate that Appellee made the particularized objection that the good faith exception to the exclusionary rule could not apply because an AFOSI agent had recklessly omitted or misstated information. On the contrary, the military judge's comments merely confirm that this objection was "not applicable in this case" and that Appellee had presented "no evidence" in sup-

port of such an objection. These conclusions are consistent with the rest of the record, which, as discussed above, shows Appellee did not make the objection that he now makes. A contrary interpretation of the military judge's comments would negate this Court's holding in *Perkins* that the accused must make a particularized objection. It would suggest that any time a military judge concluded that all of the requirements for the good faith exception to the exclusionary rule had been met, the accused could challenge the military judge's ruling on any ground on appeal by asserting (even for the first time) that one of the requirements was not met.

## E. Conclusion

Under M.R.E. 311(d)(2)(A), as described above, objections to the admission of evidence must be made with particularity at trial and, if they are not made at trial, they are waived. As shown above, Appellee never argued at trial that the good faith exception could not apply because the AFOSI agent in this case recklessly omitted or misstated information in his submission to the military magistrate. The argument therefore was waived.[6] The AFCCA therefore erred in its reasoning.

The requirement that a party raise an objection at trial serves an important purpose. In *Perkins*, we explained that the accused must make specific objections at trial so that the government has the opportunity to present evidence in contesting them. This case illustrates this point well. At oral argument before this Court, the Government offered concrete examples of the kind of evidence that it would have sought to produce if Appellee had argued at trial that the AFOSI agent had recklessly omitted or misstated information to the magistrate. Counsel for the Government explained that trial counsel could have asked the AFOSI agent why he used the phrase "child pornography" instead of "indecent recording." And trial counsel could have asked the magistrate whether the AFOSI agent recklessly or inten-

---

[6] Perhaps recognizing that the argument was waived, appellate defense counsel did not raise the argument on appeal to the AFCCA.

tionally attempted to mislead her and whether she was misled. The answers to these questions would be highly relevant if Appellee had raised the objection that he now asserts.

## II. Certified Issues II and III

Certified Issue II is "[w]hether the Air Force Court of Criminal Appeals erred in finding the military judge abused his discretion when he denied the motion to suppress digital evidence pursuant to the good faith exception." Because the AFCCA relied on grounds that were waived by Appellee, I answer this question in the affirmative. I would reverse the AFCCA and remand the case to allow the AFCCA to complete its review under Article 66, UCMJ, considering in the first instance any arguments with respect to the exclusionary rule that were not waived and not already addressed.

Certified Issue III is "[w]hether the military judge properly denied the motion to suppress digital evidence pursuant to Military Rule of Evidence 311(a)(3), a determination not reviewed by the Air Force Court of Criminal Appeals." I do not reach this question. Deciding this issue is only necessary if the good faith exception does not apply, which is a question that the AFCCA must determine on remand when it considers any arguments that have not been waived.